IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIMBERLY A. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:08cv917-CSC |
| | ) (WO) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**I. Introduction**

In this case, the Commissioner acting through an Administrative Law Judge ("ALJ"), concluded that the plaintiff, who suffers from bipolar disorder, Type II, with a rapid cycling component, depression, and anxiety, could return to her former work as a smiling people greeter at a chain restaurant. The plaintiff, Kimberly A. Anderson ("Anderson"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Anderson then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security

("Commissioner").[1]  *See* [Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986)](). The case is now before the court for review pursuant to [42 U.S.C. § 405(g)]() and § 1631(c)(3). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

.                                    **II.  Standard of Review**

Under [42 U.S.C. § 423(d)(1)(A)](), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* [20 C.F.R. § 404.1520](), §416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in [20 C.F.R. Pt. 404](), Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, [Pub.L. No. 103-296](), [108 Stat. 1464](), the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Anderson was 31 years old at the time of the hearing before the ALJ. (R. 256.) She has completed high school. (R. 241.) Anderson's prior work experience includes working as a medical records assistant in a hospital clinic and as a smiling people greeter at Ruby

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

Tuesday. (R. 242-244.) Anderson alleges that she became disabled on June 2, 2005, due to bipolar disorder Type II, rapid cycling; depression; and anxiety. Following the hearing, the ALJ concluded that Anderson suffers from severe impairments of bipolar disorder, depression, and anxiety. (R. 17.) The ALJ determined that Anderson is able to perform her past relevant work as a server/greeter. (R. 27.) Accordingly, the ALJ concluded that Anderson was not disabled. (R. 27.)

### IV. The Plaintiff's Claim

Anderson's sole contention is that the ALJ improperly rejected the opinion of a long-term treating source and DDS consultative examiner. (Doc. No. 12, p. 5.)

### V. Discussion

**A. The Medical Records**. An ALJ has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). After carefully reviewing the medical records, the court concludes that the ALJ erred in failing to fully develop the record regarding Anderson's impairments. It is apparent that the records are not completely copied so it is impossible for the court to determine the significance of some of the evidence. For example, several photocopied medical records are illegible. (R. 126, 129, 132, 133, 140, 146, 153, 158.) In addition, page 137 of the record appears to be part of a document prepared by a psychiatrist or other specialist indicating that Anderson suffers from bipolar disorder II rapid cycling; however, the document is undated and partially illegible. (R. 137.) For this reason alone, the court is unable to determine whether the ALJ's determination was based on substantial evidence.

**B. The Medical Expert.** Anderson complains that the ALJ failed to properly credit the opinion of her long-term treating psychiatrist, Dr. Joseph P. Lucas, and the examining consultative psychologist, Dr. John Neville. Specifically, Anderson asserts that the ALJ discounted the opinions of Dr. Lucas and Dr. Neville in favor of the opinion of a non-examining medical expert, Dr. Doug McKeown.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986). The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen,* 816 F.2d 578, 581 (11th Cir. 1987).

When discussing whether Anderson has the residual functional capacity to return to her past work, the ALJ gave substantial weight to the opinion of Dr. McKeown, a non-examining psychologist, that Anderson has no limitation in the ability to respond appropriately to customers or other members of the general public and no more than mild limitations in the ability to maintain social functioning or daily activities. Taken alone, the opinion of a non-examining physician does not constitute substantial evidence to support an administrative

5

decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir 1990). However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

In this case, the ALJ assigned little weight to the assessment of Dr. Lucas, the treating psychiatrist, that Anderson has marked difficulty in maintaining social functioning, marked impairment of ability to respond to customary work pressure, moderate limitations in the ability to respond appropriately to supervision or co-workers in a work setting, and marked deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner. (R. 25.) Specifically, the ALJ determined that Dr. Lucas' opinion was not supported by the medical records.

The ALJ also discussed the opinion of Dr. Neville, the examining consultative psychologist as follows:

> As for the opinion evidence, I give substantial weight to Dr. Neville's assessment that reflects the claimant was able to understand instructions. Short-term memory was mildly to moderately impaired. Her ability to carry out instructions was moderately impaired. She is able to respond appropriately to co-workers. Her ability to cope with ordinary work pressures appeared moderately to severely impaired. She is willing to accept supervision (Exhibit 2F). His opinion is supported by his own clinical examinations and testing as discussed above, and is generally consistent with the record as a whole.

(R. 25.) Despite stating that he gave substantial weight to Dr. Neville's opinion that Anderson's ability to cope with ordinary work pressures appeared *moderately to severely* impaired, the ALJ assigned substantial weight to Dr. McKeown's opinion that Anderson has

6

*no more than mild limitations* in the ability to respond to customary work pressures. (R. 27.) When assigning substantial weight to both psychologists' opinions, the ALJ did not reconcile Dr. Neville's finding of moderate to severe limitations with Dr. McKeown's finding of mild limitations concerning Anderson's ability to cope with ordinary work pressures.

In addition, the ALJ completely ignored Dr. Neville's finding that Anderson's prognosis over the next six to twelve months is fair, as well as the psychologist's recommendation that Anderson receive continued medication, treatment, and psychotherapy. (R. 171.) The ALJ is not free to simply ignore medical evidence, nor may the ALJ pick and choose between the records selecting those portions which support his ultimate conclusion.

Moreover, the ALJ's reliance on Dr. McKeown's testimony when rejecting the treating and examining physicians' opinions is misplaced. First, Dr. McKeown testified that Anderson had three visits with Dr. Lucas and three or four visits with Dr. Julie E. Kline and that there was no evidence of ongoing psychological treatment. (R. 257.) The medical records, however, indicate that Anderson received treatment at Grayson & Associates, P.C., by either Dr. Lucas, Dr. Kline, or Dr. David Faber on a routine basis between December 27, 2004, and August 14, 2006. (R. 164-168 , R. 211-220.) Although Anderson did not return to Grayson & Associates for treatment for financial reasons until July 26, 2007, the medical records indicate that Dr. Lucas continued to provide prescriptions for medication, including Diazepam, Flouxetine, and Trazodone, on a routine basis between August 2006 and July 2007. (R. 121-22.) When Anderson returned to Dr. Lucas' office on July 26, 2007, Dr. Lucas conducted an examination and increased Anderson's prescription of Lamictal. (R. 210.)

Consequently, the ALJ's finding that Anderson received only "sporadic treatment" during 2006 and 2007 is not supported by substantial evidence. (R. 27.)

The court is also unable to determine the basis of Dr. McKeown's conclusory opinions. During the hearing, after Dr. McKeown gave a brief recitation of the medical records, the following exchange between the ALJ and the psychologist occurred:

> Q    Okay. Now if you would we're going to go, go through – and these tend to be criteria which are relating to mental limitations and considering job settings, and if you would, please, answer none, mild, marked, moderate or marked. And the first would be respond appropriately to customers or the general public?
>
> A    None.
>
> Q    Respond appropriately to supervisors?
>
> A    None.
>
> Q    Respond appropriately to co-workers?
>
> A    None.
>
> Q    Respond to customary work pressure?
>
> A    Mild.
>
> Q    Use judgment in simple one or two step work related decisions?
>
> A    None.
>
> Q    Use judgment in details or complex work related decisions?
>
> A    Mild.
>
> Q    Understand, remember, and carry out simple or one and two step instructions.
>
> A    None.

Q   Understand, remember, and carry out detailed or complex instructions?

A   Mild.

Q   Maintain attention, concentration, or pace for periods of at least two hours.

A   Mild.

Q   Maintain social functioning?

A   None to mild.

Q   And the last one, maintain activities of daily living?

A   None to mild.[4]

(R. 259.) In his analysis, the ALJ rejected Dr. Lucas' findings by merely summarizing the medical records and adopting Dr. McKeown's conclusory opinions. The court, however, is unable to determine the basis of Dr. McKeown's conclusory opinions from his testimony. Rote recitation of the medical evidence is not a substitute for articulating reasons for discounting a treating physician's opinion. The ALJ's recitation of the medical records and his reliance on Dr. McKeown's conclusory opinions is simply deficient as a matter of law.

The court also cannot conclude that the ALJ's discounting of Dr. Lucas' opinion based on a February 23, 2006, notation indicating that Anderson's "case would likely be cleared" is supported by substantial evidence. (R. 25.) The record clearly indicates that the "case" referenced by Dr. Kline in her notes concerns a Jefferson County Department of Human

---

[4] Remarkably, Anderson's counsel chose not to examine McKeown at the conclusion of the ALJ's questioning of him. While it may be true that these hearings are not adversarial, counsel still have an obligation to their clients. To allow McKeown's testimony to stand without some challenge or demand for explanation is not consistent with counsel's obligation.

Resources' case involving Anderson's children being returned to her custody. On May 18, 2005, Dr. Kline found that Anderson was in compliance with DHR orders. (R. 151.) On June 21, 2005, Dr. Kline noted that "DHR is out of the picture in 6 months." (R. 149.) On February 23, 2006, Dr. Kline stated that "end of March will probably close the case." (R. 130.) On March 29, 2006, Dr. Kline entered a notation stating that "this is our last session." (R. 215.) The medical records from Grayson and Associates also include a Jefferson County Department of Human Resources Progress report dated March, 30, 2006. (R. 127.) Despite the closing of the DHR case, Anderson continued to receive treatment at Grayson & Associates when she could afford to do so.

Moreover, the ALJ failed to consider Anderson's inability to afford medical treatment when determining that Anderson has the residual functional capacity to return to her past work as a greeter. The ALJ discounted Anderson's treating psychiatrist and the consultative examining physician and discredited Anderson's allegations of mental problems based on the lack of medical treatment. While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). During the hearing, Anderson testified that she had not returned to counseling since July 2007 because she did not have insurance. (R. 249, 251.) In addition, the medical records are replete with references to Anderson's inability to afford medical treatment. For example, pharmacy records indicate that Anderson was not insured from May 2005 through January 2007. (R. 120-121.) She was provided samples of medication. (R.

10

145, 156, 165.) On March 24, 2005, a physician noted that Anderson did not show for her previously scheduled appointments because she had insurance problems. (R. 156.) In September 2005, medical personnel noted that Anderson was unable to afford a particular medication. (R. 142.) On August 3, 2006, medical personnel noted that Anderson requested a referral to Cooper Green Hospital because she could "no longer afford to f[ollow] up at Grayson & Associates." (R. 212.) When discrediting Anderson's testimony and rejecting Dr. Lucas' opinion concerning Anderson's limitations, the ALJ failed to consider whether Anderson's financial condition prevented her from seeking medical treatment. Thus, this court cannot conclude that the ALJ's rejection of Dr. Lucas' opinion and his discrediting of Anderson's testimony based on her failure to seek additional treatment is supported by substantial evidence.

The Government argues that the ALJ's determination that Anderson has the residual functional capacity to return to her past work is supported by substantial evidence because she testified that she quit working as a smiling people greeter at Ruby Tuesday when she got custody of her children.[5] The court recognizes that testimony that a claimant quit a job for reasons unrelated to a medical condition may, along with other evidence, constitute substantial evidence to support a conclusion that she is not disabled. *See Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir. 1970) (affirming finding of disability where claimant who quit

---

[5] The Government also places great reliance on Anderson's GAF score of 74 as support for its argument that the Commissioner's decision is supported by substantial evidence. This court notes that a GAF score is "not an assessment of a claimant's ability to work, but a global reference scale to aid in the treatment of an ongoing condition." *Jiles v. Comm'r of Social Security*, No. Civ. A. 05-G-0861-S, 2006 WL 4402937, * 2 n. 1 (N.D. Ala. Sept. 11, 2006).

work of her own volition, had arthritis in the little finger of each hand, and had 20/20 vision in one eye and 20/50 corrected vision in the other); *Harrelson v. Astrue*, 273 Fed. Appx. 632, 2008 WL 1734747 (9th Cir. 2008) (where claimant quit for religious reasons, none of the physicians indicated that she was disabled, and a psychological evaluation indicated she may have been presenting herself as more psychologically disturbed than was the case, claimant was found not disabled); *Logston v. Astrue*, 566 F. Supp. 2d 945, 961 (S.D. Iowa 2008) (where claimant worked as a customer service representative for several months after her injury, quit for reasons unrelated to her medical condition, and was encouraged by her physicians to be more physically active, there was substantial evidence to support a finding of not disabled); *Henrich v. Barnhart*, 270 F. Supp. 2d 1052, 1057 (N.D. Iowa 2003) (where claimant quit working at a nursing home because she no longer had transportation to her job and continued to engage in substantial work activity by mowing lawns and operating riding lawn mowers, substantial evidence supported a finding of not disabled). However, the evidence indicates that Anderson had difficulty performing her job as a smiling people greeter. Although Anderson testified that she stopped working when she got custody of her children, she also stated that the job was "very hectic," that "when it wasn't busy [she could] keep that smile on [her] face," but that sometimes she would "get aggravated real easy, fidgety, nervous." (R. 247.) In light of Anderson's testimony and medical evidence indicating she received extensive counseling for her mental condition, this court cannot conclude that Anderson's testimony that she quit her job as a smiling people greeter when she got custody of her children, by itself, demonstrates substantial evidence that Anderson is not

disabled.

Because the ALJ relied on conclusory statements or a mis-characterization of the medical records by the non-examining medical expert, failed to articulate specific reasons for rejecting the treating physician's opinion, and failed to consider Anderson's inability to afford treatment, the court cannot conclude that the ALJ's determination that Anderson has the residual functional ability to return to her past work as a greeter is supported by substantial evidence.

## V. Conclusion

Accordingly, the court concludes that this case be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order shall accompany this opinion.

Done this 23rd day of March, 2010.

                                  /s/Charles S. Coody  
                              CHARLES S. COODY  
                              UNITED STATES MAGISTRATE JUDGE